182 Cal.App.4th 330 (2010)
In re the Marriage of TERESA ANNE and THOMAS ALAN MAcMANUS.
TERESA ANNE MAcMANUS, Respondent,
v.
THOMAS ALAN MAcMANUS, Appellant.
No. G041248.
Court of Appeals of California, Fourth District, Division Three.
February 25, 2010.
*332 Geoffrey N. Lachner for Appellant.
Jan Mark Dudman for Respondent.

OPINION
SILLS, P. J.
Thomas Alan MacManus appeals from the judgment dissolving his marriage to Teresa Anne MacManus.[1] He contends the trial court abused its discretion when it reallocated back child support to back spousal support without considering Teresa's need and his ability to pay. We affirm.

FACTS
In November 2002, following an incident of domestic violence, Teresa filed a petition for dissolution of marriage and applied for a domestic violence restraining order. The parties stipulated to the terms of the order, which provided that Thomas would stay away from Teresa and their three daughters and would attend counseling and a batterer's program. The parties also stipulated that they owned a community property business, Pacific Drywall Systems, Inc. (PDS), from which each was to receive $3,000 per month, and that they also owned two rental properties in San Diego, known as Boise Avenue and Thomson Court. Thomas agreed to pay $1,145 per month in child support.
Criminal charges were filed against Thomas based on the same domestic violence incident, and the criminal court also issued a protective order *333 proscribing contact with Teresa and their three daughters. In December 2002, Thomas violated the protective orders and pleaded guilty to charges of felony spousal abuse (Pen. Code, § 273.5, subd. (a)); he was incarcerated for five months. After Thomas was released from jail, the parties reconciled and lived together from May 2003 to August 2004.
Teresa filed an order to show cause in October 2004, seeking spousal and child support, attorney fees, and the division of their property. Her declaration stated that Thomas had "gutted the operations of PDS by . . . misappropriation and/or dissipation of corporate assets, gross mismanagement, and day trading of securities which resulted in huge losses of community property. As a consequence, IRS tax liens for non-payment of PDS employee withholding taxes have been recorded against real property owned by the parties, e.g. Boise Avenue and Thomson Court property; and further, [Teresa's] employer has received a Notice of Levy from the IRS relating to PDS' tax problem in the amount of $218,764.46." Teresa further stated that the rental income on Boise Avenue and Thomson Court was sufficient to cover the properties' expenses, but she claimed Thomas misappropriated two months of rental income to set up a new drywall company and for his personal expenses, resulting in two months of mortgage arrearages.
Teresa explained that PDS settled a lawsuit in 2003, and the settlement proceeds were being paid in monthly installments of $17,437.85. Teresa asked that she be given control of the settlement proceeds "to apply towards child and spousal support, chargeable against [Thomas's] community property interest therein, to the extent [he] fails to pay timely any child and/or spousal support ordered by the court." After a hearing, the parties stipulated that the November and December 2004 installments would be deposited directly into the client trust account of Teresa's attorney, to be held pending further order of the court. Shortly thereafter, Thomas was arrested on charges related to domestic violence; he was convicted and incarcerated from October 2004 to February 2007. The hearing on the remaining issues in the order to show cause was continued until May 2008.
At trial, Teresa testified she had made the mortgage payments on Boise Avenue for about 16 months. Tenants "destroyed" the property, and she had no money to repair it. The parties' adult daughter, Diana, had been living there since October 2005. PDS owned a piece of property, known as Poway, which was lost to foreclosure because there was no money to pay the mortgage or the taxes. The tenants in Thomson Court refused to pay rent because there were extensive leaks and mold. The property sat empty for one year before it was lost to foreclosure because Teresa was unable to pay the mortgage.
*334 After trial, the court awarded future child support of $377 per month, based on Thomas's average monthly income of $1,800. The court found that "both parties took assets" of PDS and its successor. "On this record I cannot conclude that one party took more than the other party or that either party is entitled to any kind of a credit or charge." The court found "it is appropriate to delete from the total arrearages the child support that otherwise would have been due during the period of time that they, in fact, lived together and shared all of the assets, expenses, and income." After the deduction, the total amount of child support arrearages due was $67,414. The court found Teresa "us[ed] her best efforts, under extraordinarily difficult circumstances, to marshal the assets of the community and to use those assets to discharge community obligations and normal living expenses for the family." The court also found Teresa had not proved that Thomas received more from the settlement on the PDS lawsuit than she did; consequently, "neither party is entitled to a credit or a charge with respect to the settlement of that lawsuit."
The court stated it considered the factors in Family Code[2] section 4320 in determining future spousal support, including the "skills, education, and training of both parties," "periods of unemployment," and "the ability of both sides to pay spousal support, and the needs of each party." It also considered the history of domestic violence, which it found was "lengthy, . . . pervasive, extensive, and very severe." It awarded no spousal support to either party, finding it would be "entirely inappropriate" to order Teresa to pay Thomas "given the history of domestic violence" and it would be "a severe hardship" to order Thomas to pay spousal support.
The court indicated its intent to divide the balance of the attorney's trust account equally between the parties, which at that point was $130,950. Teresa's counsel pointed out that a different bench officer had previously ordered $20,000 released from that account to Teresa "as child support, subject to reallocation by the court," and $1,200 released to Thomas to be used towards his obligation for attorney fees. Thomas asked for credit for the $20,000 against his obligation for child support arrearages. The court stated, "I'm inclined to reallocate that as spousal support for the past. I've already given [Thomas] a significant credit against child support arrears for the period of time that they were reconciled. In light of the entire record and the whole history of this matter, . . . I am reallocating that to past spousal support."

DISCUSSION
On appeal, Thomas contends the trial court abused its discretion in reallocating to past spousal support the $20,000 previously distributed from *335 the trust account as child support. He argues there is nothing in the record to indicate the trial court considered the parties' needs and abilities before making the award. As we explain, the trial court properly exercised its discretion.
(1) When making an award of permanent spousal support, the trial court is required to consider and weigh all the factors enumerated in section 4320 to the extent they are relevant to the case. (In re Marriage of Cheriton (2001) 92 Cal.App.4th 269, 302 [111 Cal.Rptr.2d 755].)[3] Temporary spousal support, however, is subject to the trial court's broad discretion and "may be ordered in `any amount' based on the party's need and the other party's ability to pay. [Citations.]" (In re Marriage of Wittgrove (2004) 120 Cal.App.4th 1317, 1327 [16 Cal.Rptr.3d 489]; see § 3600.)
In 1999, the Legislature expanded the list of factors to be considered for permanent spousal support by adding language about domestic violence to section 4320. As a result, former subdivision (h) of section 4320 directed the *336 trial court to consider "[t]he age and health of the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party where the court finds documented evidence of a history of domestic violence . . . against the supported party by the supporting party." (See Historical and Statutory Notes, 29F West's Ann. Fam. Code (2004 ed.) foll. § 4320, p. 223.)
In 2001, the Legislature passed Senate Bill No. 1221 (2001-2002 Reg. Sess.), which removed the domestic violence language from former subdivision (h) of section 4320 and placed it in a separate subdivision for consideration by the trial court: "(i) Documented evidence of any history of domestic violence . . . between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party." Senate Bill No. 1221 also added section 4325, which created a rebuttable presumption against awarding temporary or permanent spousal support to an abusive spouse,[4] and added subdivision (m) to section 4320: "The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4325."
Senate Bill No. 1221 (2001-2002 Reg. Sess.) also amended section 3600, the statute authorizing a temporary spousal support order, to require the trial court to consider domestic violence when making its award. Section 3600 now reads: "During the pendency of any proceeding for dissolution of marriage . . ., the court may order (a) the husband or wife to pay any amount that is necessary for the support of the wife or husband, consistent with the requirements of subdivisions (i) and (m) of Section 4320 and Section 4325. . . ."[5]
*337 (2) An award of temporary spousal support "`is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.' [Citation.]" (In re Marriage of Murray (2002) 101 Cal.App.4th 581, 594 [124 Cal.Rptr.2d 342].) Such awards rest within the broad discretion of the trial court and will not be reversed on appeal absent a showing of a clear abuse of discretion. (In re Marriage of Wittgrove, supra, 120 Cal.App.4th at p. 1327.) Also, a temporary spousal support award can be made retroactively, at least to the date of the order to show cause requesting spousal support. (In re Marriage of Dick (1993) 15 Cal.App.4th 144, 166 [18 Cal.Rptr.2d 743]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶ 5.171, p. 5-72.) (3) Before the incorporation of the consideration of domestic violence into the temporary support statute, one court observed: "[T]here are no explicit statutory standards governing temporary support. [Citation.] Nor are there explicit statutory standards controlling decisions about retroactivity. Absent statutory direction, the trial court's exercise of its discretion regarding retroactivity of temporary support must be guided by two overriding concerns: the supported spouse's need and the supporting spouse's ability to pay. In short, `the trial court should tailor its award on the basis of the equitable rights of the parties in light of their economic needs and abilities' during the period for which a retroactive increase is sought. [Citation.]" (In re Marriage of Cheriton, supra, 92 Cal.App.4th at pp. 312-313.)
The question before us is to what extent the trial court's consideration of a history of domestic violence can influence an award of temporary spousal support. There are no California cases on this question. The trial court here made no findings of Teresa's need or Thomas's ability to pay. Thomas was incarcerated from October 2004 to February 2007; presumably, he had no ability to pay during that time. Teresa testified she lost PDS, Thomson Court and the Poway property because she did not have the income to keep them going. From this testimony, we can infer Teresa had the need for support during the separation.
(4) The trial court's comments suggest it made the past spousal support award on equitable grounds. The lack of support caused the dissipation of community assets, Teresa had suffered from severe domestic violence, and Thomas was incarcerated because of that domestic violence. While the court could not have ordered Thomas to make temporary support payments to Teresa while he was in jail, it could order him to take on more arrearages at the time the property was divided.
(5) Commentators have observed that the introduction of domestic violence as a consideration for a spousal support award "is another area where *338 fault evidence is allowed in spousal support litigation." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶¶ 6.824.5, 6.924.1, pp. 6-302.6, 6-338; see Olear, "Fault" is Back (and With a Vengeance) (Nov. 2003) 45 Orange County Lawyer 46.) (6) Given the trial court's broad discretion to "consider the `big picture' concerning the parties' assets and income available for support in light of the marriage standard of living" (In re Marriage of Wittgrove, supra, 120 Cal.App.4th at p. 1327), we cannot say the order was an abuse.

DISPOSITION
The judgment is affirmed. Respondent is entitled to costs on appeal.
Fybel, J., and Ikola, J., concurred.
NOTES
[1] As in many family law cases, we will refer to the parties by their first names to avoid confusion. (See, e.g., In re Marriage of Witherspoon (2007) 155 Cal.App.4th 963, 967, fn. 2 [66 Cal.Rptr.3d 586].)
[2] All subsequent statutory references are to the Family Code.
[3] Section 4320 reads: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment. [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties. [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party. [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living. [¶] (d) The needs of each party based on the standard of living established during the marriage. [¶] (e) The obligations and assets, including the separate property, of each party. [¶] (f) The duration of the marriage. [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party. [¶] (h) The age and health of the parties. [¶] (i) Documented evidence of any history of domestic violence, as defined in Section 6211, between the parties, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party. [¶] (j) The immediate and specific tax consequences to each party. [¶] (k) The balance of the hardships to each party. [¶] (1) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a `reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties. [¶] (m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4325. [¶] (n) Any other factors the court determines are just and equitable."
[4] Section 4325: "(a) In any proceeding for dissolution of marriage where there is a criminal conviction for an act of domestic violence perpetrated by one spouse against the other spouse entered by the court within five years prior to the filing of the dissolution proceeding, or at any time thereafter, there shall be a rebuttable presumption affecting the burden of proof that any award of temporary or permanent spousal support to the abusive spouse otherwise awardable pursuant to the standards of this part should not be made. [¶] (b) The court may consider documented evidence of a convicted spouse's history as a victim of domestic violence, as defined in Section 6211, perpetrated by the other spouse, or any other factors the court deems just and equitable, as conditions for rebutting this presumption. [¶] (c) The rebuttable presumption created in this section may be rebutted by a preponderance of the evidence."
[5] The 2001 amendment to section 3600 stated the amount must be "consistent with the requirements of Sections 4320 and 4325." In 2002, the section was amended to clarify that the trial court need consider only the history of domestic violence, not all the factors in section 4320. (See Historical and Statutory Notes, 29E West's Ann. Fam. Code (2004 ed.) foll. § 3600, p. 461.)