Filed 8/15/22  Marriage of Hall CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of KEITH HALL and TONYA CLAYCOMB HALL. | B311539 |
| KEITH HALL, Petitioner and Respondent, v. TONYA CLAYCOMB HALL, Appellant. | (Los Angeles County Super. Ct. No. BD646287) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Colin P. Leis, Judge.  Affirmed.

Tonya Claycomb Hall, in pro. per. for Appellant.

Niddrie Adams Fuller Singh and Victoria E. Fuller for Petitioner and Respondent.

————————————

# INTRODUCTION

Tonya Claycomb Hall (Claycomb) appeals from a family court order modifying temporary spousal support in the marital dissolution action between her and Keith Hall (Hall). Claycomb contends the family court abused its discretion in considering evidence of her domestic violence against the parties' daughters in its order. The family court did not abuse its discretion when modifying temporary spousal support. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

A. *The Parties' Marriage and Prior Temporary Support Orders*

Hall and Claycomb were married for 23 years and had four daughters, Isabella, Arianna, Evaliese and Elysia.[1] During the marriage Hall was the primary earner. Through Hall's real estate investment activities the couple accumulated significant wealth, including an eight-figure estate property.

Hall filed a petition for dissolution of marriage on September 22, 2016. On April 10, 2017, when two of their daughters were still minors, the parties entered into a stipulation and order regarding temporary spousal support and child support. The order provided Hall would pay Claycomb $45,000 per month in temporary spousal support and $5,000 per month in child support. At the time of that order, Hall's base pay was $250,000 per year, plus $2 million per year in quarterly bonuses.

In February 2018, Hall filed a request for an order seeking modification of support after his bonuses were halted.

---

[1] By the time of trial, the parties' daughters ranged in age from 19 to 25 years old.

On July 26, 2018, the family court granted the request and entered an order reducing temporary spousal support to $5,394 per month (less child support of $149 per month payable by Claycomb to Hall).  The order also provided for additional *Ostler-Smith* spousal support calculated from an annual accounting of the larger of Hall's taxable income or cash distributions from various entities.[2]

B.     *Claycomb's Request To Modify Temporary Spousal Support and Hall's Allegations of Claycomb's Domestic Violence Against the Couple's Children*

On May 28, 2020, Claycomb filed a request for order seeking an increase of her temporary spousal support from $5,394 to $54,000 per month.  In his opposition, Hall asked the family court to consider Claycomb's domestic violence when setting the amount of spousal support.  As an offer of proof of their testimony at trial, Hall submitted declarations from Isabella, Arianna and Elysia, which graphically described Claycomb's repeated acts of domestic violence against her daughters.[3]

---

[2]     An *Ostler-Smith* provision is an additional support award calculated as a percentage of any discretionary bonus income actually received.  (See *In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949; *Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54.)

[3]     Claycomb disputes the allegations of domestic violence.  At trial, she moved to strike her daughters' declarations,  but her motion was taken off calendar at her request.  Although Isabella, Arianna and Elysia testified at trial,  Claycomb only designated the fourth day of trial for inclusion in the record,  which solely includes testimony from Hall and Claycomb.

Isabella attested Claycomb beat her and her sisters, "from the day [they] were old enough to handle physical abuse," including choking and kicking them, spitting in their faces and pulling their hair. Isabella stated Claycomb often called her demeaning and offensive names and stole thousands of dollars from her summer job earnings for Claycomb's own use. She asserted Claycomb's "tactics were more aggressive" when their father was not present.

In her declaration Arianna stated Claycomb pushed her and her sisters down flights of stairs and threw plates and knives at them. She described her 15th birthday party, when Hall discovered Claycomb beating Arianna; Hall shoved Claycomb away to protect Arianna, which Claycomb later described as an instance of violence by Hall against Claycomb. Arianna witnessed repeated instances of violence by Claycomb toward her sisters and toward Hall, and she defended her two younger sisters, Evaliese and Elysia, from their mother after their eldest sister Isabella left for college.

Elysia, the youngest daughter, described similar incidents of abuse throughout her childhood, including Claycomb locking her in the closet and beating her with a wooden hanger. She also described witnessing Claycomb beat her sister Evaliese with a belt. Elysia disclosed that when she was four years old, she told Hall that Claycomb had beaten her. After Hall confronted Claycomb she beat Elysia "twice as hard" the following day and threatened Elysia that she would "pay for it worse" if she "ever said anything to anyone again." After that, Elysia said she never disclosed the abuse to anyone. She lived with persistent anxiety, suicidal thoughts, and "constant fear" of Claycomb until she was 14 years old and moved in with Hall.

4

Noting the amount of his annual salary without bonuses, Hall requested the court maintain base spousal support at $5,394 per month. However, he sought a modification of the *Ostler-Smith* component, requesting that it be calculated from distributions he actually received from various entities, rather than "phantom" income attributed to him on his tax returns based on illiquid gains. Finally, because Claycomb purported to incur expenses exceeding $75,000 per month, Hall asked that the family court cap the *Ostler-Smith* support at $94,870 per month based on the marital standard of living (though he did not anticipate earning sufficient income to reach the cap).

C.   *The Family Court's Order*

The bench trial occurred over four days, during which Isabella, Arianna and Elysia testified.[4] On the final day of trial the court requested the parties "brief the application of Family Code Section 4320(i) [requiring courts to consider "documented evidence" of domestic violence by either spouse in ordering spousal support] to Family Code Section 3600 [authorizing temporary support during a pending dissolution]."

On January 24, 2021, the family court issued an order modifying spousal support. The court found Claycomb committed "numerous severe acts of domestic violence and abuse over many years against the parties' daughters." The court explained that "in making that finding, the court fully credits the daughters' testimony, and disbelieves [Claycomb]'s denials. The court concluded the legislative history of Family Code section 4320,

---

[4]   Evaliese was prepared to testify but was not called as a witness.

5

subdivision (i)(5), showed intent to disfavor spousal support orders in favor of abusers.

Based on its finding, the family court found "it equitable that [Hall] should pay no more support than [Claycomb] reasonably needs to maintain hearth and home based upon the parties' marital standard of living." The court explained: "By limiting [Claycomb's] support to her financial needs, the court intends that [Claycomb's] domestic violence denies [her] the greater support that might flow from [Hall's] high income under typical Santa Clara guideline support and *Ostler-Smith* calculations." The court stated it did "not aim to impoverish [Claycomb] by forcing her to descend several levels of lifestyle; instead, the court aims to avoid the inequity of adding insult to [Hall's] injury by making him support [Claycomb] beyond her financial needs commensurate with her needs established during marriage."

The family court found Claycomb's "reasonable needs" amounted to $43,000 per month, or $522,000 annually. The court observed that Claycomb "lives rent-and-mortgage-free in a three-story, five-bedroom, three-bath marital home two blocks from the beach." However, it found Claycomb reasonably incurred costs relating to property taxes, insurance and other monthly expenses, plus $30,000 per month for savings and investments. The family court ordered Hall to pay Claycomb "base support of $4,255 per month in accord with his $250,000 base pay." The court also ordered Hall to make an annual *Ostler-Smith* payment based on a percentage of the lesser of his taxable income or cash distributions received, "in order to avoid the inequity of husband paying support to wife from phantom income from which he did

6

not receive cash," in an amount not to exceed $470,940 ($522,000 total need minus $51,060 [12 months x $4,255]).

Claycomb timely appealed the family court's order.

## DISCUSSION

### A.    *Standard of Review*

"An order regarding the modification of spousal support is reviewed for abuse of discretion."  (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 29.)  Awards of temporary spousal support "will not be reversed on appeal absent a showing of a clear abuse of discretion."  (*In re Marriage of MacManus* (2010) 182 Cal.App.4th 330, 337 (*MacManus*).)

### B.    *Analysis*

#### 1.    *Temporary spousal support and modification of temporary spousal support order*

"An award of temporary spousal support "'is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.'"  (*MacManus, supra,* 182 Cal.App.4th at p. 337.)  Pursuant to Family Code section 3600, "'[p]ending a marriage dissolution . . . the court . . . may order either spouse to pay "any amount that is necessary" for the other spouse's support, consistent with the requirements of sections 4320, subdivisions (i) and (m), and 4325.'"[5]  (*In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1067 (*Freitas*).)

_____

[5]    Further undesignated statutory references are to the Family Code.

By its reference to section 4320, subdivisions (i) and (m), and section 4325, section 3600 "requires the trial court to consider domestic violence between the parties when evaluating requests for . . . temporary spousal support." (*In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 501 (*Brewster*); accord, *Freitas, supra,* 209 Cal.App.4th at p. 1067; *MacManus, supra,* 182 Cal.App.4th at p. 336.) For temporary spousal support, "the trial court need consider only the history of domestic violence, not all the factors in section 4320."[6] (*MacManus, supra,* 182 Cal.App.4th at p. 336, fn. 5.) Specifically, section 4320, subdivision (i), requires the court to consider "[a]ll documented evidence of any history of domestic violence" when ordering spousal support, whether "between the parties or perpetrated by either party against either party's child." Section 4320, subdivision (m), provides, "[t]he criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4325."[7] Beyond this statutory directive to consider domestic violence when making an award of temporary spousal support, "[a]wards of temporary spousal support rest within the broad discretion of the trial court and may be ordered in 'any

---

[6] "Permanent support, by contrast, is constrained by numerous statutory factors set out in section 4320." (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 595 (*Murray*), disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

[7] Section 4325 sets forth a rebuttable presumption that a spouse who has been convicted of domestic violence against the other should not receive an award of temporary or permanent spousal support.

amount' (§ 3600) subject only to the moving party's needs and the other party's ability to pay." (*Murray*, *supra*, 101 Cal.App.4th at p. 595; accord, *MacManus*, *supra*, 182 Cal.App.4th at p. 337.)

A temporary spousal support award "may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3603.) Courts generally require a "material change of circumstances" to modify a temporary spousal support order. (See *Freitas, supra,* 209 Cal.App.4th at pp. 1068-1069; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 638; but see *Murray, supra,* 101 Cal.App.4th at p. 597, fn. 11 [noting in dicta that some courts have not required a showing of changed circumstances for modification of temporary spousal support, in contrast to permanent spousal support].) However, "[t]he changed circumstances rule is not to be applied mechanistically or without exception," and "'there can be cases where there [has] been no change of circumstances yet it would be just and equitable to modify an existing order.'" (*Freitas, supra,* 209 Cal.App.4th at p. 1069 [court did not abuse its discretion in terminating temporary spousal support award on the basis of past domestic violence by the supported spouse, which the parties had not addressed before the prior support order].)

> 2.    *The family court did not abuse its discretion when it considered evidence of Claycomb's domestic violence against her daughters in its modification of temporary spousal support*

Claycomb contends the court lacked jurisdiction to consider evidence of her domestic violence because she did not raise domestic violence in her request for modification of temporary

9

spousal support, and there was no domestic violence conviction, restraining order (DVRO) or DVRO request before the court. Claycomb asserts the court abused its discretion when it permitted declarations and testimony from the parties' adult daughters about her abuse of them during their childhood, and when the court made a finding of domestic violence against her.

We find no error. There is no statutory requirement that a preexisting DVRO, DVRO request or criminal conviction be in place before the court may consider evidence of domestic violence, and Claycomb provides no authority for such a proposition. Although a domestic violence criminal conviction or issuance of a protective order, if present, must be considered by the court in modifying or terminating temporary spousal support (§§ 3600, 4320, subds. (i)(4), (m), 4325), it is not a necessary prerequisite.[8]

Rather, section 4320, subdivision (i), expressly and broadly requires the court to consider "*[a]ll* documented evidence of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of: [¶] (1) A plea of nolo contendere. [¶] (2) Emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party. [¶] (3) Any history of violence against the supporting party by the supported party. [¶] (4) Issuance of a

---

[8]     Even in the context of rebutting the section 4325 presumption against spousal support by a convicted abuser, the [Legislature] "did not include language requiring that the convicted spouse prove that the payor spouse was convicted of a domestic violence offense in order to rebut the section 4325 presumption against spousal support, opting instead to use the more inclusive term, 'documented evidence' of a history of domestic violence." (*Brewster, supra,* 45 Cal.App.5th at p. 504.)

protective order after a hearing pursuant to Section 6340. [¶] (5) A finding by a court during the pendency of a divorce, separation, or child custody proceeding, or other proceeding under Division 10 (commencing with Section 6200), that the spouse has committed domestic violence." (Italics added.) In exercising its discretion to award temporary spousal support, a family court may rely on a documented history of domestic violence to modify the amount of temporary spousal support it otherwise would have awarded based on the parties' need and ability to pay. (See *MacManus, supra,* 182 Cal.App.4th at pp. 337-338; *Freitas, supra,* 209 Cal.App.4th at p. 1069 [court had discretion to terminate temporary spousal support based on past domestic violence by the supported spouse not considered in prior support order].)

The sworn testimony of the parties' daughters constituted documented evidence of a history of domestic violence perpetrated by Claycomb against her children and was properly considered by the family court. "Indeed, domestic violence is the *only* issue that the Legislature has expressly mandated that a trial court consider in determining whether to award temporary spousal support." (*Freitas, supra,* 209 Cal.App.4th at p. 1071; cf. *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304, superseded by statute on other grounds as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049 [In making a spousal support order, "the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and *apply* each applicable statutory factor in setting spousal support. [Citations.] Failure to do so is reversible error."].) Given that "the Legislature has singled out domestic violence as a critical

11

factor that a court *must* consider in determining whether to award temporary spousal support" (*Freitas, supra,* 209 Cal.App.4th at p. 1071), the family court did not abuse its discretion in considering evidence of domestic violence by Claycomb against the parties' daughters.

Claycomb asserts she did not abuse her daughters and was instead the victim of domestic violence by Hall during the marriage. The family court, however, explained that it "fully" credited the daughters' testimony and did not believe Claycomb. The daughters also refuted Claycomb's accusations against Hall, explaining that Claycomb falsely claimed Hall physically abused her after occasions where she injured herself and that Hall only pushed Claycomb away from himself or the children when she "wouldn't back down." In making a finding of domestic violence, it is "well within the trial court's discretion to determine the facts and judge the credibility of the witnesses." (*Brewster, supra,* 45 Cal.App.5th at p. 507.) "[W]e do not judge credibility on appeal" (*id.* at p. 508), and the family court had authority to believe the daughters' statement of events over Claycomb's. Their testimony, which the court determined was credible, provides substantial evidence in support of the family court's domestic violence finding against Claycomb. (See *id.* at p. 509 [court was within its discretion to deny additional temporary spousal support to wife where husband's testimony of alleged domestic violence incident was found more credible].)

We disregard Claycomb's factual assertions and arguments that are founded on information not in the appellate record. "A reviewing court must accept and is bound by the record before it [citations], cannot properly consider matters not in the record [citations], and will disregard statements of alleged facts in the

12

briefs on appeal which are not contained in the record." (*Weller v. Chavarria* (1965) 233 Cal.App.2d 234, 246; accord, Cal. Rules of Court, rules 8.204(a)(1)(C) [appellate brief must support references with specific citations to the record], 8.204(a)(2)(C) [opening brief must "[p]rovide a summary of the significant facts limited to matters in the record].) We also decline to grant Hall's motion for sanctions. "An appeal that is simply without merit is not by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

## DISPOSITION

The order modifying temporary spousal support is affirmed. Hall is awarded his costs on appeal.

WISE, J.[*]

We concur:

PERLUSS, P. J.

FEUER, J.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.