[No. B224899. Second Dist., Div. Four. July 5, 2011.]

In re the Marriage of ELAINE TONG and RICHARD SAMSON.
ELAINE TONG SAMSON, Respondent, v.
RICHARD SAMSON, Appellant.

24

**COUNSEL**

Hermes & Glavin, Adam R. Taylor; John L. Dodd & Associates and John L. Dodd for Appellant.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller, Lisa R. Wiley; Law Offices of Robert N. Kipper and Robert N. Kipper for Respondent.

**OPINION**

**EPSTEIN, P. J.**—This is an appeal from an order denying appellant Richard Samson's motion for modification of temporary spousal support. We reverse to the extent that the family court incorrectly allocated Richard's[1] severance pay to a single month for purposes of a provision in the parties' stipulated support order requiring Richard to pay respondent Elaine Tong Samson 35 percent of his monthly compensation in excess of $25,000. This percentage-based component of the stipulated order, modeled after *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560] (*Ostler & Smith*), was intended to apply to Richard's variable monthly income from commissions, not to a one-time lump-sum severance pay. We affirm in all other respects.

## FACTUAL AND PROCEDURAL SUMMARY

The parties were married in 1985 and separated in 2007. Elaine filed a petition for dissolution and sought temporary spousal support in March 2008. Richard, a mutual funds wholesaler, argued that spousal support should be based on his base salary with an *Ostler & Smith* adjustment for sales commissions he received above his base salary. In May 2008, the court ordered Richard to pay Elaine $15,031 per month and 35 percent of "all his compensation in excess of $45,000 during that month." In June 2008, Richard

---

[1] We follow the common practice in family law cases of referring to the parties by their first names for the sake of clarity.

sought a modification due to the decrease of his monthly commissions. Based on terms proposed by Richard, the parties stipulated that he would pay Elaine $9,059 per month and 35 percent of "all his compensation in excess of $25,000 for each month."

In June 2009, Richard was advised that he would be laid off from his job of 28 years. He was terminated effective July 10, 2009, and received a severance package of $309,700.81 in September 2009. In March 2011, Richard filed an order to show cause (OSC) seeking clarification of the effect of severance pay on the support order, as well as a termination of temporary spousal support based on Elaine's cohabitation with a gentleman. The family court denied the OSC. Richard was charged with various arrearages, including $99,645.28 out of the severance pay. This timely appeal followed.[2]

## DISCUSSION

### I

Richard asked the family court to treat his severance pay as income to be spread over 13 months. His request was based on *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 75, 82 [46 Cal.Rptr.2d 8] (*Stephenson*), where the family court treated $52,000 in severance pay the husband received upon his early retirement as the equivalent of eight and one-half months of salary. Elaine distinguished *Stephenson* on procedural grounds because the husband in that case brought an OSC before he retired and thus sought a prospective modification of spousal support. (*Id.* at p. 75.) She argued that, since Richard brought the OSC months after he was laid off, he was in effect seeking to retroactively modify his spousal support obligation. The court agreed with Elaine that Richard was seeking a retroactive modification of temporary spousal support and denied the OSC because such a retroactive modification is impermissible. (See Fam. Code,[3] § 3603; *In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 596 [124 Cal.Rptr.2d 342] (*Murray*).) This was incorrect. Richard did not seek to retroactively lower the base monthly support of $9,059 or the 35 percent assessment on his compensation in excess of $25,000 in any given month. Rather, the parties disagreed whether Richard's lump-sum severance pay was to be allocated to a single month for purposes of the percentage assessment in the stipulated order.

Richard's severance pay had five components: (1) a years-of-service component limited to 12 months of salary, or $100,000; (2) a lump sum in

---

[2] An order regarding payment of temporary spousal support is directly appealable. (See *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].)

[3] All further statutory references are to the Family Code.

lieu of commission limited to a six-month benefit of $152,853.48; (3) a lump-sum qualitative compensation award component of $35,208.33; (4) a healthcare component of $1,500; and (5) a master retirement plan equivalent component of $3,422.28. The severance pay amounted to $294,984.10, but Richard was advised that his final paycheck would include "final earnings and pay for any unused, accrued vacation." He received $309,700.81 in September 2009. The severance pay was thus a lump sum comprised of more than a single month's compensation. Elaine argues at length that Richard's severance pay was compensation, a point that Richard does not contest. But Elaine assumes that because the severance pay is compensation, it must be compensation for September 2009, the month in which it was received. By its terms, the stipulated order envisions that Richard would pay the additional 35 percentage assessment of spousal support based on his compensation "for each month." The order provides no guidance on how lump-sum compensation for several months should be treated.

If an order is ambiguous, the reviewing court may examine the record for its scope and effect and may look at the circumstances of its making. (*In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 948–949 [126 Cal.Rptr.2d 45].) Extrinsic evidence is allowed to determine the parties' intent when a stipulated order is ambiguous. (*In re Marriage of Trearse* (1987) 195 Cal.App.3d 1189, 1192 [241 Cal.Rptr. 257].) Unless there are conflicts in the extrinsic evidence, the interpretation of a stipulated support order is reviewed de novo. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 [75 Cal.Rptr.3d 333, 181 P.3d 142].)

■ Elaine claims that there is no evidence that the parties ascribed any particular meaning to the word "compensation." Not so. The record is clear that the percentage assessment was included in the original support order and in the subsequent stipulated support order because Richard's monthly income was mostly comprised of his sales commissions, which fluctuated from month to month. Richard referred to this assessment as an "*Ostler-Smith*" percentage throughout the proceedings, as did the family court in its order denying the OSC. There is no evidence in the record that Elaine objected to this characterization. An *Ostler & Smith* percentage is assessed "over and above guideline support" for "any discretionary bonus actually received." (*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387 [82 Cal.Rptr.3d 497].) It was originally justified on the ground that future bonuses are not guaranteed, and it would be unfair to require the obligor to file motions for modification every time a bonus is reduced. (*Ostler & Smith, supra,* 223 Cal.App.3d at pp. 41–42.) The variable income that the *Ostler & Smith* percentage was aimed at capturing in this case was Richard's fluctuating monthly sales commissions. ■ There is no evidence in the record that in 2008 either party was aware Richard would be terminated or receive a lump-sum severance pay a year later. The court therefore erred in accepting

Elaine's assumption that the lump-sum severance pay in its entirety was compensation subject to the *Ostler & Smith* percentage in the month when it was received.

Elaine argues that, because of its years-of-service component, the severance pay was payment for past services rather than a replacement of future income. While some early cases have made this distinction for purposes of characterizing a severance pay as community or separate property, more recent cases have found it unhelpful. (See *In re Marriage of Frahm* (1996) 45 Cal.App.4th 536, 538–541, 543–544 [53 Cal.Rptr.2d 31], and cases cited in that decision.) Whether the severance pay is community or separate property is irrelevant to its allocation under the stipulated support order because the order does not depend on that characterization. In addition, even the early cases, such as *In re Marriage of Lawson* (1989) 208 Cal.App.3d 446, 454 [256 Cal.Rptr. 283], on which Elaine relies, have recognized that although a severance amount may be based on years of service, it is designed to replace lost wages. The bulk of Richard's severance pay was apparently designed to compensate him for 12 months of lost salary and six months of lost commissions. It did not represent a single month of compensation and should not have been treated as such for purposes of the *Ostler & Smith* percentage.

On remand, the family court has discretion to allocate the severance pay. The court is not limited to Richard's proposal to spread the severance pay over 13 months at the flat rate of $25,000 for the first 12 months and $9,700.81 for the 13th month. Rather, it may choose to allocate the severance pay according to its terms. For instance, the severance pay in *Stephenson* consisted of one week of pay for every year the husband worked for his employer, which the family court estimated equaled eight and one-half months of salary. (*Stephenson, supra*, 39 Cal.App.4th at p. 75.) The appellate court held this was not an abuse of discretion. (*Id.* at p. 82.) The lump-sum salary and commissions components that comprise the bulk of Richard's severance pay include an allocation mechanism in that they consist of 12 months of salary and six months of commissions. The allocation of the remaining, much smaller, portion of the severance pay would depend on the extent to which its components, as well as the additional payments included in the severance package, were part of the monthly compensation that the support order intended to capture and the months for which any such compensation was due.

## II

Richard also appeals from the family court's refusal to prospectively modify or terminate his temporary spousal support obligation based on

Elaine's cohabitation and Richard's unemployment. An order regarding the modification of spousal support is reviewed for abuse of discretion. (*Stephenson, supra,* 39 Cal.App.4th at p. 76.) We affirm for reasons somewhat different from the family court's. (See *RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 776 [96 Cal.Rptr.3d 362].)

■ Temporary spousal support is awarded under section 3600.[4] It is based on the supported spouse's needs and the other spouse's ability to pay. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 [16 Cal.Rptr.3d 489] (*Wittgrove*).) " 'Whereas permanent spousal support "provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property," temporary spousal support "is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." [Citations.]' [Citation.] The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount. [Citation.]" (*Ibid.*) A change of circumstances is required for the modification of support orders, including temporary ones. (See *In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412–413 [6 Cal.Rptr.2d 791] [" 'Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order' "]; see also *Murray, supra,* 101 Cal.App.4th at p. 597, fn. 11 [noting without deciding that the finality of temporary support orders requires modification based on changed circumstances].)

Richard requested the immediate termination or substantial reduction of spousal support due to Elaine's cohabitation with her friend. His request was premised on the rebuttable presumption in section 4323, subdivision (a)(1), that cohabitation diminishes the need for spousal support. The court denied the request, finding that Elaine's need for support had not "substantially diminished" since her friend's sole contribution to the household was $800 a month for food. Section 4323 appears in part 3 of division 9 of the code (§ 4300 et seq.), governing permanent support. But even were its cohabitation presumption applicable to a temporary support order, the presumption was rebutted in this case. The contribution of $800 a month for food was not so substantial in the context of this case as to justify the immediate termination or significant reduction of the $9,059 in base spousal support that Richard was to pay Elaine.

---

[4] Pending a marriage dissolution or legal separation, the court may order one spouse "to pay any amount that is necessary for the support of" the other, "consistent with the requirements of subdivisions (i) and (m) of Section 4320 and Section 4325 [pertaining to a spouse's convictions for or history of domestic violence]." (§ 3600.)

■ Richard did not seek to modify or terminate spousal support based on his unemployment because he relied on *Stephenson*. There, the appellate court held that the family court's reduction of spousal support was premature in light of its decision to spread the husband's severance pay over eight and one-half months, during which the spouses' circumstances could change. (*Stephenson, supra,* 39 Cal.App.4th at p. 81.) Richard requested only that the court set a date in July 2010 to consider terminating his spousal support obligation. At the OSC hearing in April 2010, the court declined to set such a date and directed the parties to set hearing dates according to the court rules. But because its written ruling allocated Richard's entire severance pay to September 2009 for purposes of the *Ostler & Smith* percentage, the court concluded that it would not be premature to consider whether Richard's unemployment justified a modification of spousal support. The court was under the impression that it needed to consider the factors listed in section 4320, and it refused to modify Richard's support obligation because he had presented no evidence on these factors, even though his unemployment amounted to a change of circumstances.

■ The factors listed in section 4320 apply to permanent support orders.[5] Of these, the only factors relevant to temporary orders are the supported spouse's needs and the supporting spouse's ability to pay. (See *Wittgrove, supra,* 120 Cal.App.4th at p. 1327.) To the extent the court required Richard to present evidence on factors included in section 4320 but inapplicable to temporary spousal support, it erred. " 'Ability to pay encompasses far more than the income of the spouse from whom temporary support is sought; investments and other assets may be used for . . . temporary spousal support . . . . [Citations.]' [Citation.]" (120 Cal.App.4th at p. 1327.) While investments and other assets may theoretically be available for purposes of temporary spousal support, the support awarded in this case was based solely on Richard's income and the parties had already stipulated once to its reduction based on the decrease in his commissions. Richard provided a declaration, stating that he was unemployed and actively looking for a new job. We fail to see what additional evidence the family court expected Richard to offer. ·

But because in his OSC Richard did not seek relief on the ground that he was unemployed, the court was not required to consider this ground. (See *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1126 [132 Cal.Rptr.2d

---

[5] Section 4320 begins, "In ordering spousal support under this part, the court shall consider all of the following circumstances . . . ." A Law Revision Commission comment explains: "In the introductory clause, the reference to 'under this part' has been added to make clear that the court is only required to consider these factors when making an order for permanent spousal support." (Cal. Law Revision Com. com., 29F West's Ann. Fam. Code (2004 ed.) foll. § 4320, p. 223.)

680].) Additionally, we cannot determine whether Richard had indeed established a change in circumstances at the time he filed the OSC because that would depend on how the family court chooses to allocate his severance pay on remand. We therefore affirm the family court's denial of the portion of the OSC seeking modification and termination of the temporary spousal support order.

## DISPOSITION

The order is affirmed in part, reversed in part, and remanded to the family court with directions to reallocate Richard's severance pay as compensation for purposes of the *Ostler & Smith* assessment. The parties are to bear their own costs on appeal.

Willhite, J., and Manella, J., concurred.

On July 18, 2011, the opinion was modified to read as printed above.