Filed 8/29/24  Marriage of Patton CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| IN RE MARRIAGE OF PATTON. <br><br> TARYN ZIGTERMAN, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> JONATHAN PATTON, <br><br>     Defendant and <br>     Respondent. | B329509 & B329509R <br><br> (Los Angeles County <br>  Super. Ct. No. 18STFL06463) |

APPEAL from orders of the Superior Court of Los Angeles County, Michael R. Powell, Judge.  Dismissed in part, affirmed in part, reversed in part, and remanded.

John L. Dodd & Associates and John L. Dodd, for Plaintiff and Appellant.

No appearance for Respondent.

Appellant Taryn Zigterman appeals from postjudgment orders denying (1) her request for child support arrearages based on her former husband Jonathan Patton's receipt of proceeds from the exercise and sale of stock options and (2) her request for attorney fees. Taryn[1] contends the trial court erred in determining the stock options were income for purposes of child support at the time of vesting, instead of only at exercise and sale. She also argues the trial court abused its discretion in denying her request for fees based on the disparity in the parties' income. We affirm the trial court's order denying Taryn's request for child support arrearages, but we reverse the order denying her attorney fees and remand for further proceedings regarding her request. We dismiss Taryn's separate appeal from an order solely overruling her objections to the order denying her request for fees.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. Stipulated Dissolution Judgment

The parties married in October 2016. They had one child together born that same year.

Prior to the parties' marriage, Jonathan began working for H Code Media, Inc., a private digital media company. As a recruitment and retention tool, Jonathan was granted 15,000,000 stock options in March 2016. The stock options vested at a rate of 25 percent per year in September 2017, 2018, 2019, and 2020.

---

[1] "'As is customary in family law cases, we will refer to the parties by their given names for purposes of clarity and not out of disrespect.'" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 817, fn. 1.)

The parties separated in April 2018. In May 2018, Taryn filed a petition for dissolution of marriage. She simultaneously requested a domestic violence restraining order against Jonathan. Jonathan filed his response to the dissolution petition in July 2018. Shortly after that, the trial court issued a three-year restraining order against Jonathan.

In September 2019, the parties entered into a stipulated judgment of dissolution. Pursuant to the judgment, Jonathan was to pay Taryn $1,732 per month in child support. The stipulated judgment stated Jonathan was to pay bonus child support based on performance-based commissions he received on a quarterly basis. During the case, the parties had stipulated he usually received such commissions in February, May, August, and November. Regarding the H Code stock options, the stipulated judgment awarded all interest in the options to Jonathan as his separate property.

## B.    Postjudgment Modifications

In April 2020, the parties entered into a stipulation and order regarding modification of child support. The parties added an *Ostler-Smith*[2] provision to calculate "Bonus/Commission Support." The parties acknowledged Jonathan received "bonuses and commissions" quarterly and specified he was to pay bonus child support on the same day he received a commission. Lastly, the parties agreed, "All support obligations are deemed current."

---

[2]    An *Ostler-Smith* provision is "'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received.' [Citations.] Its purpose is to capture fluctuations in the supporting spouse's income that are not included in the flat rate amount of support." (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949.)

In June 2021, the parents entered into another stipulation and order (the June 2021 Stipulation) regarding "guideline child support." Jonathan was to pay Taryn $1,240 per month and additional support based upon his receipt of "bonus/commission/other income over his base . . . ." Once again, the parties acknowledged Jonathan received bonuses and commissions quarterly. He was to make the quarterly payments beginning in May 2021, and continuing every three months thereafter.

A separate paragraph in the June 2021 Stipulation concerned stock options. The parties agreed, "Should [Jonathan's] income be converted into stock options, he shall disclose this information to [Taryn] immediately and provide all documents evidencing or relating to the same. The parties shall then meet and confer to determine the additional child support that would be due based on the receipt of said stock options." The next paragraph read, "All support obligations are deemed current, with the exception of any overpayments by [Jonathan], subject to proof."

## C.     Taryn's Request for Order Seeking Child Support Arrearages and Attorney Fees

In Fall 2021, H Code sold a majority stake to a private equity firm. Jonathan exercised his stock options and sold the shares. In September 2021, he received $2,359,875.23 in proceeds from the sale.

In September 2022, Taryn filed a request for order (RFO) seeking child support arrearages for 2021 and 2022. Taryn also requested arrearages based upon Jonathan's February and May 2022 quarterly commissions, reimbursement for federal and state

tax refunds, modification of child support based on Jonathan's earning capacity of $450,000 per year, and modification of responsibility for add-on expenses. Jonathan filed his own RFO seeking to modify the parties' parenting plan and requesting co-parenting counseling.

In her RFO, Taryn argued all proceeds from the sale of the H Code stock constituted bonus income attributable to Jonathan's employment. She utilized the *Ostler-Smith* provision in the June 2021 Stipulation to calculate the related amount of child support owed. Taryn sought arrearages in the amount of $106,902 from the exercise and sale of the H Code stock options, plus $10,690 in interest.

Jonathan's position was "the stock options were income available for support when they vested in 2020, not when they were sold, and the parties stipulated in June 2021 that [his] support obligations were current." He relied on *In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514 (*Macilwaine*), as support for his claim.

Additionally, Taryn requested attorney fees and sanctions pursuant to Family Code sections 2030 and 271[3] and the June 2021 Stipulation. Taryn initially requested $24,110 for fees. Later in a reply declaration, Taryn asserted she was increasing her request for fees based on sections 2030, 3557, and 271. Taryn's counsel filed declarations requesting $57,936 for fees relating to financial issues and $13,740 for fees relating to custody issues.

---

[3] All further undesignated statutory references are to the Family Code.

**D.    The Trial Court's Orders**

On December 16 and 20, 2022, the trial court held a hearing on Taryn's RFO.  At the December 20 hearing, the court indicated it was denying the request for child support arrearages.[4]  In arguing for attorney fees, Taryn contended fees were mandatory under section 2030 because of the vast disparity in the parties' needs and ability to pay.  The court took the request for fees under submission.

On March 13, 2023, the trial court issued its findings and order after the hearing denying Taryn's RFO seeking child support arrearages on the stock options.  The court found that at the time the parties entered into the judgment of dissolution in September 2019 and the June 2021 Stipulation, child support was set with the parties' actual knowledge of the existence of the stock options.  The court also found there were no legal restrictions on the sale of the stock options once they all vested by September 2020, and that the parties deemed all child support current in the June 2021 Stipulation.

The settled statement concerning the hearings indicates the court concluded that pursuant to *Macilwaine*, Jonathan owed child support when the stock options vested, not when they were exercised or sold.  The court found it was Taryn's "burden to show that the stock options could not have been valued at the time of vesting so the parties could deal with any child support owed."  The court further found that although H Code was a private company, Taryn could have hired an expert to attempt to value the stock options.  In addition, the court stated that when Taryn

---

[4]    There was no court reporter present for the December 16, 2022, hearing.  Taryn filed a settled statement regarding the trial court's findings at the December hearings.

agreed child support was current, she waived her right to child support on the stock options, as she knew about the vesting of the options when she signed the June 2021 Stipulation. The court concluded Taryn did not have a right to child support arrearages on the stock options at exercise and sale.

As part of its March 13, 2023, findings and orders, the trial court also addressed various other issues the parties raised. In part, the court ordered Jonathan to pay Taryn reimbursements for tax-related garnishments, raised the monthly child support Jonathan was to pay to $2,377, and imputed yearly income of $452,578 to Jonathan for purposes of calculating child support.

The same day the trial court issued its findings and order, the court issued a separate order denying Taryn's request for attorney fees. The court stated that need-based attorney fees and costs were premised on each party having access to legal representation and that it considered numerous factors regarding Taryn's "request for child support arrears" in denying the request. The court found the nature of the case and skill required to perform the work were "not overly complex" and "the nature and issues of discovery were relatively small." Additionally, the court found the amount of work was extensive but unnecessary in light of the court's orders stating bonus child support was predicated on performance-based commissions. It noted that while Jonathan's sale of the stock options might have been a material change in circumstances warranting a child support modification, it was not underpayment of child support resulting in arrearages. The court found Taryn's argument was "imprudent."

Ten days after the trial court issued the March 13, 2023, orders, Taryn filed three objections to the court's rulings. On

April 4, 2023, the court issued a minute order overruling the objections.

On May 10, 2023, Taryn filed a notice of appeal from the trial court's March 13, 2023, postjudgment orders. On May 18, 2023, Taryn filed a second notice of appeal from the April 4, 2023, order overruling her objections.

## DISCUSSION

### A. Jonathan's Motions to Dismiss Taryn's Appeals

Before the record was filed, Jonathan, in pro per, filed motions to dismiss each of Taryn's appeals.

In the motion to dismiss Taryn's appeal from the March 13, 2023, orders, Jonathan argues Taryn failed to timely file a civil case information statement, failed to include a proposed settled statement with her notice designating the record on appeal, improperly filed a single proposed settled statement for two appeals, and filed her notice designating the record on appeal two days late. Taryn filed a civil case information statement for each appeal more than one month before Jonathan filed the motions to dismiss. Further, Taryn states that she also filed separate proposed settled statements for each appeal before the motion to dismiss was filed. Jonathan does not cite any authority holding these deficiencies should result in dismissal. He does not show he was prejudiced as a result of Taryn's alleged procedural defects. The motion to dismiss Taryn's appeal from the March 13, 2023, orders is denied.

However, Taryn's second appeal concerns only the trial court's April 4, 2023, order overruling her objections to the March 13, 2023, order denying her request for attorney fees. Taryn states she filed the second notice of appeal "[o]ut of an

8

abundance of caution" after the trial court issued the separate order on April 4. Taryn's appeal provides no separate argument and does not identify any error regarding any particular objection. Nor does Taryn address the appealability of the April 4, 2023, order. In the absence of any showing that a separate appeal lies from the order solely overruling Taryn's objections, we grant Jonathan's motion to dismiss the separate appeal from the April 4 order. (Code Civ. Proc., § 904.1, subd. (a); see *Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 942 ["'An appealable judgment or order is essential to appellate jurisdiction, and the court, on its own motion, must dismiss an appeal from a nonappealable order'"].) To the extent Taryn raises issues relating to her objections to the court's order denying her attorney fees, we may consider the issues on her appeal from the underlying March 13, 2023, orders. (Code. Civ. Proc., § 906 ["Upon an appeal pursuant to [s]ection 904.1[,] . . . the reviewing court may review . . . any intermediate ruling . . . which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party"].)

## B. Child Support Arrearages

### 1. *Legal Principles and Standard of Review*

Courts are required to calculate child support pursuant to statutory guidelines and must award the guideline amount, unless the parties stipulate to a different amount of child support or special circumstances apply. (§§ 4052, 4057, subd. (b).) The Family Code allows parents to make agreements pertaining to child support, "subject to the approval of the court." (§ 4065, subd. (a).)

9

Child support orders are generally reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282, superseded by statute on other grounds as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049 (*Morton*).) However, we review questions of law de novo. (*Macilwaine, supra,* 26 Cal.App.5th at p. 527.) "In reviewing questions of law, we review the trial court's ruling and are not bound by the trial court's stated reasons or rationales." (*Earnest v. Commission on Teacher Credentialing* (2023) 90 Cal.App.5th 62, 74.) We review any factual findings made in connection with a child support ruling under the substantial evidence test. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.)

The interpretation of a stipulated support order is reviewed de novo. (*In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 27.) To interpret a stipulated order, we utilize contract principles. We "give effect to the parties' mutual intentions, first examining the contract's plain language. [Citations.] The language governs if it is clear, explicit, and does not involve absurdity. [Citations.] It must be read in the context of the whole instrument and circumstances of the case. [Citations.] The construction should give effect to all provisions without inserting or omitting text." (*Estate of Jones* (2022) 82 Cal.App.5th 948, 952–953.)

2.      *Taryn Does Not Establish She is Entitled to Child Support Arrearages for the Exercise and Sale of the Stock Options*

Taryn argues the stock options were not income for purposes of support at vesting. She argues that they became

10

income at the time of exercise and sale.  We are not persuaded by her contentions.

*Macilwaine* decided when stock options must be recognized as income in calculating child support.  (*Macilwaine*, *supra*, 26 Cal.App.5th at pp. 517–518.)  The husband-obligor received stock option grants as part of his compensation working for LendingClub Corporation.  (*Id.* at p. 518.)  He argued the options were not income until he exercised the options and sold the stock.  (*Id.* at p. 530.)  The wife-obligee asserted the options were income once they vested and restrictions on the husband's ability to exercise and sell them were removed.  (*Ibid.*)  The court looked to other states, which required stock options to be factored into child support once they were vested and mature.  (*Id.* at pp. 530–531.)  It found the approach taken by these states aligned with our Legislature's command that support orders reflect the parent's ability to support his or her children and provide for prompt support.  (*Id.* at p. 531.)  Once restrictions on exercise and sale were removed, the husband's stock options were a measurable form of compensation available to him.  (*Id.* at p. 532.)  Therefore, they were income available for child support.  (*Ibid.*)

Taryn argues *Macilwaine* is distinguishable because it involved stock options for a large publicly traded corporation.  Taryn contends "there is a vast difference" between those stock options and those of "the small, non-public company in this case."  She asserts H Code shares were not registered on any exchange, making it complicated to ascertain their value when restrictions on exercise and sale were removed.  She argues the H Code stock options should have been counted as income at the time that they

11

were actually exercised and sold to ensure the proper value was assigned to them.

Taryn does not show that departure from the rule established in *Macilwaine* is warranted. As a preliminary matter, the husband in *Macilwaine* began working for LendingClub when "it was a private (nonpublicly traded) startup company." The husband characterized his move to LendingClub "'as risky . . . at that time due to its size and the uncertainty of the market.'" (*Macilwaine, supra,* 26 Cal.App.5th at p. 518.) Some of his stock options vested before LendingClub was a public company. (*Id.* at p. 519.) Thus, *Macilwaine* is not entirely distinguishable from this case merely because it involved what became a publicly traded company.

Further, Taryn did not support the need to depart from the *Macilwaine* rule with any evidence in the trial court. Although she argues there was no realistic way to value the options when they vested, she provides no record citation or authority to support her claim. Indeed, she acknowledges that experts could have valued the stock options, though it may have been costly.[5] She speculates there may have been no market for the H Code shares, or no market other than the corporation itself, but she did not provide the trial court with any evidence to support this speculation. The fact that H Code ultimately sold for a high price

---

[5] Two of the out-of-state cases *Macilwaine* noted had held stock options must be factored into child support once vested were *In re Marriage of Robinson and Thiel* (Ariz. Ct.App. 2001) 201 Ariz. 328 and *Engel v. Landman* (Ariz. Ct.App. 2009) 221 Ariz. 504. (*Macilwaine*, at p. 530.) Each of these cases noted there are numerous methods available for valuing employee stock options. (*Robinson and Thiel*, at pp. 333–334; *Engel,* at pp. 512–514.)

indicates that the options likely had some value at the time of vesting.

Taryn's reliance on the reasoning in the New Jersey case, *Heller-Loren v. Apuzzio* (N.J.App.Div. 2004) 371 N.J.Super. 518, is misplaced. Taryn cites *Heller-Loren* to argue, "[I]f an option does not have a readily ascertainable fair-market value when received or exercised, the employee recognizes income, *for federal tax purposes*, only upon sale of the stock in the amount by which the proceeds exceed the option price." (*Id.* at p. 531, italics added.) However, the quoted dicta discusses how options are treated for tax purposes, which can differ from how they are assessed for child support purposes. (See *Macilwaine*, *supra*, 26 Cal.App.5th at p. 529 ["The tax model is not controlling because the policies underlying federal tax laws and our child support laws differ"].)

We conclude the trial court did not err by determining the stock options were income for purposes of child support at vesting.

3. *Taryn Does Not Demonstrate the Trial Court Erred by Denying Her Request for Arrearages*

We turn to the significance of the June 2021 Stipulation, which settled disputes about child support the parties were having at the time. It discussed Jonathan's guideline support obligation and support based upon additional income over his base salary, including stock options. It further read, "All support obligations are deemed current, with the exception of any overpayments by [Jonathan]." Taryn does not dispute being aware of Jonathan's H Code stock options or that they all vested by September 2020. With knowledge of the stock options, Taryn

entered into the stipulation, agreed to a set amount of child support, and deemed all support obligations current in the June 2021 Stipulation.

Taryn claims that the trial court erred in finding the June 2021 Stipulation barred her claim. She argues that "[a]ll support obligations are deemed current" excludes support obligations related to stock options. However, the language of the June 2021 Stipulation is clear. The parties settled disputes related to all of Jonathan's child support obligations as of June 2021, including those related to the H Code stock options that had vested.

Taryn also argues that it would violate public policy to interpret the June 2021 Stipulation to "forgive" Jonathan's support obligation relating to the H Code stock options. However, the cases she cites are distinguishable. (See e.g., *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1215–1217 [where neither party disputed the amount of arrears, parties could not privately contract for obligor to pay lesser amount and waive the remainder]; *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1138–1139 [parties in stipulated judgment of paternity could not divest the trial court of jurisdiction to order child support].) Here, the parties had a dispute about how much Jonathan owed in child support, and they resolved their dispute by way of settlement with full knowledge of the H Code stock options. The trial court then entered an order based upon the stipulation. The parties did not forgive an undisputed amount of support owed or restrict the trial court's power to order child support.

Moreover, the June 2021 Stipulation did not prevent Taryn from seeking additional child support based upon income Jonathan thereafter received from the exercise and sale of the H

14

Code stock options. *Macilwaine* observed that if the husband in that case "exercised and sold options during a subsequent support year, and spent (rather than reinvesting) the proceeds, the net annual gain would constitute income." (*Macilwaine, supra*, 26 Cal.App.5th at p. 534.) However, Taryn did not argue in the trial court, and does not argue on appeal, that Jonathan owes child support based upon the net gain he received. As we have discussed, Taryn made no attempt to prove the value of the stock options when they vested and how much net profit accrued to Jonathan when he sold the stock. Instead, she argued the *Macilwaine* rule did not apply and the stock options should have been valued for purposes of child support not upon vesting, but only upon exercise and sale. Taryn neither asked the trial court to calculate, nor provided it with any evidence upon which it could calculate, the portion of the proceeds from exercise and sale of the stock options available for support.

Based on the foregoing, Taryn fails to establish the trial court erred in failing to award her additional child support related to the H Code stock options.

## C.     Attorney Fee Order

Taryn contends that even if the child support order is not reversed, the order denying her request for attorney fees under sections 2030 and 3557 must be reversed because the trial court's ruling rests on legal error. We agree.

### 1.     *Legal Principles and Standard of Review*

Section 2030 provides that in any related proceeding subsequent to entry of a judgement in a marital dissolution action, "the court shall ensure that each party has access to legal

15

representation . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and [ ] the cost of maintaining or defending the proceeding." (§ 2030, subd. (a)(1).) It further provides, "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. . ." (§ 2030, subd. (a)(2).) Section 2030, subdivision (a)(2), requires the court to make "express findings–that is, findings stated in words, either in writing or orally on the record." (*Morton*, *supra*, 27 Cal.App.5th at p. 1050.)

Section 3557 states that, upon determining that (1) an award of fees is appropriate, (2) that there is a disparity in access to funds to retain counsel, and (3) that one party is able to pay for legal representation for both parties, a court shall award reasonable attorney fees to a custodial parent in any action to enforce an existing child support order. (§ 3557, subd. (a)(1)(A).)

A trial court's denial of attorney fees is reviewed for abuse of discretion. (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469.) However, a court's discretion is not unlimited; the court must comply with section 2030, subdivision (a)(2)'s mandatory provisions because discretion "'must be exercised within the confines of the applicable legal principles.'" (*Morton*, *supra*, 27 Cal.App.5th at p. 1050.) A ruling

16

based upon a legal error constitutes an abuse of discretion. (*In re Marriage of Wendt & Pullen* (2021) 63 Cal.App.5th 647, 658 ["legal error is abuse of discretion"]; see also *In re John F.* (1983) 150 Cal.App.3d 182, 183, 185–186 [court abused its discretion by failing to consider appropriate factors and make required findings].) A court commits legal error by failing to comply with section 2030's mandatory provisions. (*Morton*, at p. 1053.)

2. *The Trial Court Abused its Discretion*

Taryn argues (1) the trial court abused its discretion in denying a fee award because of the huge disparity in the parties' income, (2) the court erred by primarily relying on the fact she did not succeed on her claim for child support arrearages in denying her fees instead of considering the relative need of the parties, and (3) the court erred by not awarding her fees for the several other claims on which she prevailed.

Taryn's income and expense declaration filed in September 2022 reported she had $1,726 in income the previous month and an average monthly income of $5,551, while Jonathan reported an average monthly income of $26,733. At the hearing on her fee request, Taryn contended there was a vast disparity in the parties' income and assets. She asserted she made $60,000 a year, while Jonathan made over $500,000 a year, and that she had no savings, while Jonathan received more than $2 million from the exercise and sale of his H Code stock options the year prior. The court took the fees request under submission at the end of the hearing without expressing what factors it was considering in making a ruling.

In its March 13, 2023, order denying fees, the trial court noted it considered numerous factors regarding Taryn's "request

17

for child support arrears," including the nature of the case, the amount of work involved, and the skill required to perform the work. However, the court's order does not include or address all of section 2030, subdivision (a)(2)'s required findings. (*Morton*, *supra*, 27 Cal.App.5th at p. 1053.) Because the court did not make express findings regarding the factors set forth in section 2030, subdivision (a)(2), at the hearing or in its order, the court abused its discretion. (*Morton*, at p. 1053; see *In re Marriage of Wendt & Pullen*, *supra*, 63 Cal.App.5th at p. 658.)

The absence of the express findings requires reversal if prejudicial. (*Morton*, *supra*, 27 Cal.App.5th at p. 1051.) "An appellant in a civil case establishes an error was prejudicial by showing there is 'a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached.'" (*Ibid.*) "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) Applying this standard, we cannot say the error was harmless.

As mentioned above, the record shows a disparity in access to funds between Taryn and Jonathan. Furthermore, the trial court's order focused solely on Taryn's request for child support arrearages. The court did not address or make findings as to the reasonableness of the fees Taryn incurred regarding her other claims, which included Taryn successfully having the court impute income of $452,578 per year to Jonathan for child support purposes. There is a reasonable probability that if the trial court considered the disparity in access to funds between the parties, together with Taryn's success on her other requests, the court may have awarded Taryn at least some attorney fees. (*Morton*,

18

*supra*, 27 Cal.App.5th at p. 1051.)  We reverse the court's order denying Taryn's request for fees and instruct the court upon remand to make the required findings and consider whether Taryn has sufficiently established her entitlement to reasonable attorney fees under section 2030, and if so, in what amount.

## DISPOSITION

The postjudgment order denying Taryn's request for child support arrearages is affirmed.  The order denying Taryn's request for attorney fees is reversed and remanded with directions to the trial court to examine Taryn's request for fees under section 2030 and make the findings required by the statute.  If the court deems it necessary, it may order the parties to submit additional briefing or evidence.  The appeal from the April 4, 2023, order overruling Taryn's objections is dismissed. No costs on appeal are awarded.

MORI, J.

We concur:


CURREY, P. J.



ZUKIN, J.

19