Filed 3/13/25  Marriage of Hinton CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Marriage of JOHN and KIMBERLY HINTON. | B329558 <br><br> (Los Angeles County Super. Ct. No. 20STFL07080) |
| JOHN HINTON, <br><br> Respondent, <br><br> v. <br><br> KIMBERLY HINTON, <br><br> Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alexander C.D. Giza, Judge.  Affirmed.

Dennis Temko; Law Offices of Melissa B. Buchman and Melissa B. Buchman for Appellant.

Law Offices of William W. Oxley and William Oxley; Jeff
Lewis Law, Jeffrey Lewis and Kyla Dayton for Respondent.

_____

## I. INTRODUCTION

Petitioner Kimberly Hinton (Kimberly) appeals from an
order denying her request for order (RFO)[1] to require her former
husband, respondent John Hinton (John), to pay purported
arrears in spousal and child support.  We affirm.

## II. BACKGROUND

A.    *Prenuptial Agreement*

On December 16, 2005, John and Kimberly entered into a
prenuptial agreement (Prenuptial Agreement), pursuant to which
they agreed their separate assets prior to marriage would remain
separate during and after marriage.  The parties also agreed that
John's separate property included all of his "income, salary,
earnings, bonuses, profits, commissions, distributions, dividends,
proprietary interests, stock options, stock splits, accumulations,
increases in value, depository receipts, interest income, rental
income, or other income generated from separate property of

_____

[1]    "In family law proceedings under the Family Code, the
term 'request for order' (RFO) 'has the same meaning as the
terms 'motion' or 'notice of motion' when used in the Code of Civil
Procedure.'  (Cal. Rules of Court, rule 5.92(a)(1)(A).)"  (*In re
Marriage of DeWolfe* (2023) 93 Cal.App.5th 906, 908, fn. 3.)

[John] and/or resulting from personal services, skills, and efforts related to the separate property of [John]," unless otherwise stated in the Prenuptial Agreement. Kimberly "specifically relinquish[ed] the right to claim a community property interest in" John's separate property; and the parties agreed that "[a]fter marriage, the income from separate property presumptively remains separate property and the increase in value of separate property presumptively remains separate property." The Prenuptial Agreement included a provision that if the parties terminated the marriage, John would pay Kimberly "on the first of each month, fifteen percent (15%) of his gross monthly income, commencing immediately upon the filing of a petition for dissolution of marriage by either party, continuing for a period of one-half the length of the marriage."

B.    *Marriage Dissolution and Settlement Agreement*

John and Kimberly married on December 26, 2005, and separated on July 12, 2020. The marriage produced two children. On July 27, 2020, John petitioned to dissolve the marriage.

On January 25, 2022, the parties entered into a marital settlement agreement entitled "Stipulated Judgment on Partial Issues" (Settlement Agreement). Among other things, the parties agreed that the Prenuptial Agreement was valid and enforceable for all purposes. They also agreed that "the terms of [the Prenuptial Agreement] are incorporated into this Judgment."

John agreed to pay Kimberly, as spousal support, "on the first of each month, fifteen (15%) percent of [John's] gross monthly income from all sources," for 87 months, commencing on July 27, 2020, through October 31, 2027. The parties recited that

John had already paid Kimberly $251,965 in spousal support from July 27, 2020, through January 15, 2022. And, Kimberly agreed to "remise, release, transfer, assign and forever quitclaim to [John], as [John's] sole and separate property, any and all right, title and interest, claim and demand which [Kimberly] has, might or could assert or claim as a spouse or otherwise, and does hereby forever waive any and all rights in and to the following property and property interests," including certain deferred compensation plans at The Hartford: "The Hartford Retirement Plan (pension plan) standing in [John's] name"; "The Hartford 'Excess Savings Plan' (Non-Qualified: 10048)"; and "The Hartford 'DCP' (Non-Qualified: 10057)."

John also agreed that commencing February 1, 2022, he would pay Kimberly child support in the amount of $5,814 per month and "additional child support" in the amount of 7 percent "of all income including, but limited to, any wages, salary, commissions, bonuses, and investment income actually or constructively received by [John] in excess of $750,000 each year."[2] The parties recited that their agreement to the child support order was "based on" John's then existing "wages and salary income of $62,500 per month."

---

[2] The Settlement Agreement provided that John would pay 2.5 percent of his income for the support of one child and 4.5 percent of his income for the support of the other child.

Kimberly asserts that the reference to "but limited to" was the result of a "scrivener's error," and the parties intended to state "'but *not* limited to.'" She provides no evidence in support of this contention. We need not resolve the merits of Kimberly's assertion as we do not rely on the language "but limited to" in interpreting the terms of the Settlement Agreement.

On June 11, 2022, the trial court entered judgment pursuant to the Settlement Agreement.[3]

C. *RFO*

In October 2022, John left his job at The Hartford and accepted a new position with a different employer. Because he left his job, John was required to withdraw the funds in his various compensation plans from The Hartford as lump sums, which he did in November 2022. The lump-sum cash outs included: $240,028 from the pension plan; $333,132 from the DCP; and $1,849,222 from the excess savings plan (deferred compensation plans).[4]

On December 9, 2022, Kimberly filed the RFO at issue on appeal, requesting, among other things, child and spousal support arrears. Kimberly asserted that John's lump-sum cash outs of his deferred compensation plans were income for purposes

---

[3]  On August 5, 2022, the trial court ordered the June 11, 2022, judgment corrected nunc pro tunc to strike the marital status termination date of June 11, 2022. The court separately signed another judgment to reflect that the marital status of the parties terminated by stipulation on May 31, 2022.

[4]  "A deferred compensation plan 'is an agreement by the employer to pay compensation to employees at a future date. The main purpose of the plan is to defer the payment of taxes.' [Citation.] The idea is to defer receipt of compensation until retirement or termination of employment, when the employee is in a lower tax bracket, thus reducing the overall amount of taxes paid. [Citation.]" (*In re IT Group, Inc.* (3d Cir. 2006) 448 F.3d 661, 664.) The parties do not dispute that John paid income tax on these lump sum payouts.

5

of the judgment and Settlement Agreement's support provisions, and that John therefore owed her additional spousal and child support payments. Kimberly requested a minimum of $167,985.70 in child support arrears, and $327,353.29 in spousal support arrears, which she claimed should have been paid on December 1, 2022.

On February 16, 2023, John filed a declaration in response to Kimberly's RFO. John declared that, after he received the lump-sum payments from the deferred compensation plans, he "reinvested nearly 100% of those funds into new retirement and other brokerage accounts." In a subsequent declaration, John testified that the new accounts "immediately started earning interest and dividends" which he agreed were subject to the spousal and child support provisions in the Settlement Agreement.[5]

On May 9, 2023, the trial court held a hearing on Kimberly's RFO and, following testimony and argument, denied it. The court concluded: "[T]he income is from the relevant time period, [income] does not include the things that have been previously earned. Other parts of the judgment indicate and confirm as separate property these preexisting financial assets. [¶] So that's how I understand the judgment language and how it should be applied to [John's] finances. So it would exclude the money in the deferred comp[ensation and] in the excess savings plan that was not earned during the relevant period, the year for

---

[5]     Kimberly does not argue that John owed arrears based on the interest and dividend payments from the new investment accounts. Rather, she argues on appeal that he owed a percentage of the entirety of the lump-sum payments from the deferred compensation plans.

which [Kimberly] is getting support." The court further stated: "I understand the language of the contract to be, and that is, talking about gross monthly income, 'monthly' must have some meaning." Regarding child support, the court stated: "[I]ncome refers to income in the categories that are indicated for child support during the relevant time period. So during the months and year that you're determined support." Kimberly timely appealed.

### III.   DISCUSSION

#### A.   *Standard of Review*

"We review the trial court's determination to grant or deny a modification of a support order for an abuse of discretion. (*Edwards v. Edwards* (2008) 162 Cal.App.4th 136, 141.) However, questions concerning the interpretation of statutes are matters of law for the reviewing court. (*Ibid*.) Likewise, 'the interpretation of a contract or other written instrument is a question of law if there is no extrinsic evidence thereon or if the evidence is without conflict and is not susceptible of conflicting inferences.' (*Lucas v. Elliott* (1992) 3 Cal.App.4th 888, 892 . . . .)" (*In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485.)

"'"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally."'" (*In re Marriage of Hibbard* (2013) 212 Cal.App.4th 1007, 1012 [(*Hibbard*)].) "'"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the

parties. [Citation.] If contractual language is clear and explicit, it governs.""" (*Id.* at p. 1013; see *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125 (*Securitas Security*).) """The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.""" (*Hibbard,* [*supra*, 212 Cal.App.4th] at p. 1013.) 'The parties' expressed objective intent, not their unexpressed subjective intent, governs.' (*Securitas Security,* [*supra*, 234 Cal.App.4th] at p. 1125.) [¶] . . . [¶]

"'The ultimate construction placed on the contract might call for different standards of review. When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. [Citations.] When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence.' (*Founding Members* [*of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003)] 109 Cal.App.4th [944,] 955–956.)" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 948 (*Minkin*).)

B.     *Analysis*

      1.     <u>Spousal Support Arrears</u>

Kimberly contends that the November 2022 lump-sum cash outs of the deferred compensation plans constitute "income" that is subject to the parties' stipulated judgment support provision pursuant to which John agreed to pay Kimberly, "on the first of each month, fifteen (15%) percent of [his] gross monthly income from all sources." According to Kimberly, the trial court therefore erred when it did not award Kimberly the purported arrears of the spousal support payment for December 2022. John counters, and the court agreed, that John's deferred compensation plans were preexisting assets, and not "'income' during the relevant period."

We begin our analysis by considering the contractual language of the Settlement Agreement. In both the Settlement Agreement and the Prenuptial Agreement that it incorporated, John agreed to pay Kimberly spousal support in the amount of 15 percent of his "gross monthly income." "Monthly" means "payable or reckoned by the month" or "occurring or appearing every month." (See Merriam-Webster's Online Dict. <https://www.merriam-webster.com/dictionary/monthly> [as of Feb. 20, 2025], archived at <https://perma.cc/ZGU2-H7G2>.) "Income" means "a gain or recurrent benefit usually measured in money that derives from capital or labor" and "the amount of such gain received in a period of time." (Merriam-Webster's Online Dict. <https://www.merriam-webster.com/dictionary/income> [as of Feb. 20, 2025], archived at <https://perma.cc/6TUS-TM6P>; see also Black's Law Dict. (12th

ed. 2024) ["money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like"].) The one-time, lump-sum cash outs of The Hartford deferred compensation plans do not fall within the definition of "monthly income" because they were not regular or periodic monthly payments such that John was required to pay Kimberly 15 percent of the total amount as spousal support in December 2022. (See *In re Marriage of Samson* (2011) 197 Cal.App.4th 23, 26, 28 (*Samson*) [lump-sum severance payment "did not represent a single month of compensation" for purposes of calculating spousal support that included a percentage of "'all [husband's] compensation in excess of $25,000 for each month'"].)

Our construction of the term "monthly income" as excluding the one-time, lump-sum cash outs of the deferred compensation plans is also consistent with the parties' mutual intent. Kimberly agreed in the Settlement Agreement to "waive any and all rights" to the deferred compensation plans. That waiver evinces an intent to exclude the corpus of the plans from spousal support calculations, even in the event that John was required upon his change of employment to withdraw the corpus in a lump sum.

The trial court therefore did not err in denying the RFO for spousal support arrears.[6]

---

[6] Kimberly additionally contends that the court's reasoning, that John did not owe spousal support on income that he "earned" prior to the spousal support period, results in absurdity. We need not address Kimberly's argument because our holding is not premised on a determination about when John "earned" the income represented by the proceeds of the deferred compensation plans. (See *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 392 ["'Because we review the correctness of the order, and not the

10

2.     Additional Child Support Arrears

As we explain above, John agreed that he would pay "additional child support" in the amount of 7 percent "of all income including, but limited to, any wages, salary, commissions, bonuses, and investment income actually or constructively received by [John] in excess of $750,000 each year." Kimberly contends that John owed arrears in child support because in November 2022 he "received" the lump-sum payments, which she characterizes as "wages, salary, and investment income." We disagree.

Throughout the proceedings, the parties and the trial court referred to the calculation of additional child support as an "*Ostler/Smith*" provision, a reference to *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler & Smith*). "An *Ostler/Smith* provision is 'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received.' (*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387 [(*Mosley*)]; see *Samson, supra*, 197 Cal.App.4th at p. 27.) Its purpose is to capture fluctuations in the supporting spouse's income that are not included in a flat rate amount of support. (*Samson,* [*supra*, 197 Cal.App.4th] at p. 27.) For example, in both *Ostler & Smith* and *Mosley*, the provision required the husband to pay a percentage of any performance bonus he received in his employer's discretion as additional support beyond a set amount of monthly support. (*Mosley,* [*supra*, 165 Cal.App.4th] at pp. 1381–1382, 1387; *Ostler & Smith, supra*, 223 Cal.App.3d at pp. 37–38, 41–42.) Case law

---

court's reasons, we will not consider the court's oral comments or use them to undermine the order ultimately entered'"].)

justifies an *Ostler/Smith* award 'on the ground that future bonuses are not guaranteed, and it would be unfair to require the obligor to file motions for modification every time a bonus is reduced [or denied].' (*Samson,* [*supra*, 197 Cal.App.4th] at p. 27; see *Ostler & Smith,* [*supra*, 223 Cal.App.3d] at pp. 41–42.)" (*Minkin, supra*, 11 Cal.App.5th at p. 949.)

Here, the parties contemplated that John would make the additional child support payments pursuant to an *Ostler/Smith* provision, that is, a provision that applies to fluctuating, discretionary, and prospective earnings. (*Minkin, supra*, 11 Cal.App.5th at p. 949.) The lump-sum withdrawals from the deferred compensation plans cannot be characterized as fluctuating, discretionary, or prospective earnings. Instead, the lump-sum cash outs reflected John's withdrawal of funds that he had previously earned. (Cf. *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 733 ["it is settled that the principal amount of a one-time, lump sum gift or inheritance is not income but the rents, interest, or dividends generated by the gift are income"].) The trial court therefore did not err by denying the RFO for additional child support arrears.

Kimberly counters that "[c]unning spouses" would "game the system" by deferring as much income as possible during marriage to avoid paying spousal and child support. We reject the contention. Here, Kimberly, through counsel, agreed to the Settlement Agreement, which required a minimum monthly child support payment, with an *Ostler/Smith* provision, and included Kimberly's express waiver of any rights to the deferred compensation plans. Nothing in the record before us suggests that John has "gamed the system" in order to avoid paying support. Moreover, a court in any future case could decline to

12

respect an agreement "'that [has] the effect of contracting away [a] child's right to support.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 534, fn. 22.)

## IV.  DISPOSITION

The order denying Kimberly's RFO is affirmed.  John is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:



HOFFSTADT, P. J.



MOOR, J.